DICKINSON WRIGHT PLLC
ERIC D. HONE
Nevada Bar No. 8499
Email:  ehone@dickinson-wright.com
8363 West Sunset Road, Suite 200
Las Vegas, Nevada  89113-2210
Tel:  (702) 550-4400
Fax:  (844) 670-6009

ROSENBAUM IP, P.C.
David G. Rosenbaum (IL Bar No. 6188852)
Benjamin D. Rotman (IL Bar No. 6306872)
1480 Techny Road
Northbrook, IL 60062
Tel:  (847) 770-6000
Fax:  (847) 770-6006
*Attorneys for Plaintiff BC International Trading & Business Support, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| BC INTERNATIONAL TRADING & BUSINESS SUPPORT, INC., a Nevada corporation,<br><br>                                      Plaintiff,<br><br>     v.<br><br>FRANK VESCI, an individual, and J & J SNACK FOODS, INC., a New Jersey Corporation,<br><br>                                      Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>1. MISAPPROPRIATION OF TRADE SECRETS UNDER 18 U.S.C. § 1836,<br>2. FEDERAL UNFAIR COMPETITION UNDER 15 U.S.C. 1125(a),<br>3. MISAPPROPRIATION OF TRADE SECRETS UNDER NEVADA REVISED STATUTES § 600A,<br>4. UNFAIR TRADE PRACTICES AND INFRINGEMENT OF TRADE SECRETS UNDER NEVADA REVISED STATUTES § 603,<br>5. BREACH OF WRITTEN CONTRACT<br>6. BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY,<br>7. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING<br>8. TORTIOUS INTERFERENCE WITH ACTUAL OR PROSPECTIVE ECONOMIC RELATIONS<br>9. UNFAIR COMPETITION UNDER COMMON LAW AND NEVADA REVISED STATUTES § 598 |

Plaintiff, BC International Trading & Business Support, Inc. ("BCI"), [1] by and through its undersigned attorneys, the law firms of Dickinson Wright PLLC and Rosenbaum IP, P.C. for its complaint against defendants Frank Vesci (individually referred to as "Vesci") and J & J Snack Foods Corp. (individually referred to as "J & J"), or collectively referred to as "Defendants," alleges as follows:

## JURISDICTION AND VENUE

1.     Jurisdiction founded on diversity of citizenship and amount. BCI is a corporation incorporated under the laws of the State of Nevada having its principal place of business in Las Vegas, Nevada.  Upon information and belief, Defendant Vesci is an individual residing in the State of Pennsylvania.  Upon information and belief, Defendant J & J is a corporation incorporated in the state of New Jersey and having its principal place of business in New Jersey. The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. §1332.

2.     Jurisdiction founded on the existence of a Federal question. The action arises 18 U.S.C. §1836 and/or 15 U.S.C. §1125(a) and this court has jurisdiction pursuant to 28 U.S.C. §1331.

3.     Supplemental jurisdiction over the Nevada state law claims is proper pursuant to 28 U.S.C. §1367.

4.     Venue before this Court is proper pursuant to 28 U.S.C., 1391(b)(2).

## INTRODUCTION

5.     This action is brought to remedy Vesci's unlawful conduct in: taking, retaining and misappropriating BCI's intellectual property, including BCI's confidential, proprietary, and trade secret information pertaining to, *inter alia*, customer lists, pricing data, source of supply, financial data & marketing, production or merchandising systems or plans; attempting, while employed by BCI, to divert customers to BCI's competitor, J & J Snack Foods (J & J);

---

[1] Pursuant to LR IA 11-2(c), David G. Rosenbaum and Benjamin D. Rotman, Esqs., co-counsel for Plaintiff BC International Trading & Business Support, Inc. will comply with LR IA 11-2 by submitting their respective petitions to practice in this matter under that Rule within 30 days.

misappropriating BCI's property and confidential information, both prior to and after his abrupt resignation from the BCI.

6.      This action is also brought to remedy J & J's unlawful conduct in hiring Vesci in a managerial position in which J & J knew or reasonably should have known that it was inevitable that Vesci would willfully and deliberately use and/or disclose BCI's confidential information pertaining to BCI's pretzel business for the benefit of J & J and to the detriment of BCI.

7.      This action is further brought to remedy J & J's manufacture, marketing and selling a Bavarian-style pretzel that has a confusingly similar trade dress as that of BCI's Bavarian-style pretzel.

8.      BCI is in the business of making, marketing and selling distinctive European food products, including, inter alia, Bavarian-style pretzels under the trademark PROP & PELLER PRETZELS.

9.      BCI has been in the business of making, marketing and selling its Bavarian-style pretzels since on or about September 30, 2011.

10.      BCI's Bavarian-style pretzels have a distinctive design element consisting of an open curved crack in the pretzel crust substantially extending along a lower bottom curve and between twist overlap end-points.  This open curved crack resembles a smile and will be referred to hereinafter as the "pretzel smile."

11.      Vesci was employed by BCI as a Regional Sales Manager independent contractor and was so employed on a contract basis from February 13, 2014 until December 31, 2014. Vesci was assigned and working for Prop & Peller Pretzels ("PPP") a division of BCI.  Vesci's job was to project, increase and promote the BCI's goodwill with existing and prospective customers in the marketplace, and to service, solicit and sell to, the customers and prospective customers assigned to him by BCI.

12.      On or about January 1, 2015 BCI formally employed Vesci as BCI's full time Northeast Sales Manager.  Unbeknownst to BCI, while Vesci was employed by the BCI, and

supposedly doing his job, Vesci secretly—and in violation of his legal and contractual obligations to BCI—actively and deceptively misappropriated BCI's confidential and proprietary documents, including trade secrets, and diverted customers away from BCI to J & J where he is now employed.

13.     On or about August 16, 2016, BCI requested that Vesci execute a revised Non-Disclosure Agreement.  Having not received an executed copy of the revised Non-Disclosure agreement, on September 7, 2016, BCI sent a reminder to Vesci to execute the revised agreement.  Having not signed the agreement, Vesci resigned from BCI's employ on that day of September 7, 2016.

14.     Upon information and belief, Vesci's relationship with J & J began prior to his resigning his position with BCI.

15.     Upon information and belief, prior to his departure, BCI: surreptitiously accessed or downloaded and took BCI's trade secret materials—including extensive, confidential analytical material, data and records generated by BCI concerning the customer base assigned by BCI to Vesci and solicited BCI customers to become J & J customers.

16.     Upon information and belief, on or about September 16, 2016, J & J employed Vesci in the capacity as a product manager.

17.     Upon information and belief, in his capacity as product manager for J & J, Vesci is directly responsible for a line of Bavarian-style pretzels made by J & J under the trademark BRAUHAUS PRETZEL.

18.     On August 4, 2016, J & J filed an intent-to-use trademark registration seeking to register the mark BRAUHAUS PRETZEL with the United States Patent and Trademark Office pursuant to 15 U.S.C. § 1051(b).

19.     Prior to Vesci's relationship with J & J, J & J did not make, market or sell a Bavarian-style pretzel twist having a cracked crust, texture, look, and scoring, similar to BCI's pretzel.

20.     Subsequent to Vesci's employment with J & J, Vesci, acting on behalf of J & J in

his capacity as product manager, has systematically contacted BCI customers for the purpose of marketing and selling J & J's BRAUHAUS PRETZELs to BCI's customers.

21.     Acting on behalf of J & J, Vesci has used his knowledge of BCI's Bavarian-pretzel price structures to offer BCI customers J & J's BRAUHAUS PRETZELs at lower prices than they purchase BCI's Bavarian-style pretzels.

22.     Acting on behalf of J & J, Vesci has misrepresented to BCI customers that he developed J & J's pretzel based on BCI Bavarian-style pretzel recipe and knowhow.

23.     Upon information and belief, while acting on behalf of J & J, Vesci has willingly and systematically used and disclosed BCI's confidential information to facilitate J & J's creation, making, marketing and selling of J & J's BRAUHAUS PRETZEL product.

24.     Vesci has misappropriated and converted, and continues to unlawfully misappropriate and convert, BCI's confidential and proprietary documents, including trade secrets.  BCI respectfully seeks remedies against Vesci, including injunctive and monetary relief, damages, lost profits, an accounting, forfeiture of illicit wages and other relief.

**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

25.     BCI hired Vesci as an independent contractor as Regional Sales Manager with BC International Trading & Business Support, Inc. on February 13, 2014.  BCI assigned to Vesci a group of customers with whom to develop and further the goodwill of the BCI, and whom Vesci was to service, solicit and sell to on behalf of the BCI.  The group of customers assigned to Vesci has changed and developed during the time since February 13, 2014.

26.     BCI hired Vesci as employee as the North East Sales Manager with BC International Trading & Business Support, Inc. on January 1, 2015.  BCI assigned to Vesci a group of customers with whom to develop and further the goodwill of the BCI, and whom Vesci was to service, solicit and sell to on behalf of the BCI.  The group of customers assigned to Vesci changed and developed during the time since January 1, 2015.

27.     As an employee of BCI, Vesci was obligated, by law and contract, to devote his full and utmost loyalty and good faith to BCI, and was prohibited from engaging in any actions

5

or conduct in violation of these duties, or which competed with, or tended to harm the BCI, and/or which would assist or further the interests of a competitor.

28.    BCI and Vesci entered into several written agreements, including (i) a Confidentiality Agreement dated February 26, 2014 (Exhibit 1), (ii) Employment Agreement dated February 26, 2014 (Exhibit 2), Employee Handbook dated February 26, 2014 (Exhibit 3).

29.    Vesci's agreements with BCI, required him, among other things, to devote his full time and efforts toward his position as Sales Manager for BCI during the term of his employment and restricted both during the term of his employment and thereafter from misappropriating BCI's trade secrets, confidential information and other tangible and intangible property, and from soliciting and diverting BCI's customers to BCI's competitors while he was employed by BCI.

### *The Confidentiality Agreement*

30.    Pursuant to paragraph 1 clauses (a) and (b) of the Confidentiality Agreement, confidential information is deemed to include, without limitation:

(a) Technical Information: methods, processes, formulae, composition, systems, techniques, inventions, machines, computer programs & research projects.

(b) Business Information: Customer lists, pricing data, source of supply, financial data & marketing, production or merchandising systems or plans.

31.    Pursuant to paragraph 2 of the Confidentiality Agreement, Vesci agreed *inter alia*, that he would:

not during, or at any time after the termination of my services or employment with the BCI, use for myself or others, or disclose or divulge to others including future employers, any trade secrets, confidential information, or any other proprietary data of the BCI in violation of this agreement.

32.    Significantly, Vesci also agreed in paragraph 3(a) of the Confidentiality Agreement, that upon termination of services/employment he would:

return to the BCI all documents and property of the BCI including, but not necessarily limited to, drawings, images, blue prints, report, manuals, any correspondence including emailed documents, customer lists, computer programs,

and all other materials and all copies thereof relating in any way to the Companies business. I further agree that I shall not retain any copies, notes, emails or abstracts of the foregoing.

### *The Employee Handbook*

33.     Pursuant to The Employee Handbook, confidential information is deemed to include, without limitation:

> Computer processes, Computer programs and codes, Product lists, Customer lists, Customer Pricing, Potential Customers Contacted, Financial information, Marketing strategies, New materials research, Pending projects and proposals, Proprietary production processes, Research and development strategies, Technological data, Technological prototypes

34.     Pursuant to The Employee Handbook page of the Confidentiality Agreement, Vesci agreed *inter alia*, that:

> Employees who improperly use or disclose trade secrets or confidential business information will be subject to disciplinary action, up to and including termination of employment and/or legal action, even if they do not actually benefit from the disclosed information any employee contacted and questioned by anybody outside the BCI family (this includes International Trading and Business Support and the press) should decline to answer questions until the employee's supervisor is notified and a determination is made on how to handle the inquiry.

35.     Pursuant to The Employee Handbook page of the Confidentiality Agreement, Vesci agreed *inter alia*, that the following non-limiting behaviors are prohibited and can result in disciplinary action:

> Sending or posting ·confidential material, trade secrets, or proprietary information outside of the organization, Sending or posting messages or material that could damage the organization's image or reputation

36.     Pursuant to The Employee Handbook page of the Confidentiality Agreement, Vesci agreed *inter alia*, that:

> Customers are among our BCI's most valuable assets. Every employee represents to BC International to our customers and the public. The way we do our jobs presents an image of our entire BCI. Customers judge all of us by how they are treated with each employee contact. Therefore, one of our first business priorities is to assist any customer or potential customer. Nothing is more important than being courteous, friendly, helpful, and prompt in the attention you give customers.

/ / /

*BCI's Confidential, Proprietary, and Trade Secret Information*

    **A.**    **BCI's Confidential Data Used by Vesci**

    37.    As the North East Sales Manager, Vesci had access to substantial confidential information related to BCI's customers, products, margins, profit percentages and markets, particularly concerning those customers assigned to him, and the products those customers purchased.  BCI, as part of doing business generates, develops, compiles and analyzes, substantial information concerning each customer, including product preferences, buying patterns, credit profiles, customer invoices and pricing, customer practices, margins and profit variances, and the exact amount and type of business transactions with each customer.  BCI then makes this information available to its Sales Managers to enable them to effectively service customers, address customer needs and offer additional products at suitable prices.  BCI spends substantial amounts of money in obtaining, compiling, developing and analyzing this data and information, and then in making it available, together with extensive analysis, for use by its sales force, including by means of advanced analytical computer programs.

    38.    The data generated, compiled, analyzed and maintained by BCI, and the associated analytic tools, provide each Sales Manager with extensive, confidential BCI data and analysis on each customer and product they deal with.  This includes the BCI's confidential data and analysis on gross profit by product and by customer, gross profit percentages, gross profit variance, historical invoices, product and payment data, credit limits, customer purchasing trends, specific product preferences and pricing of individual customers as well as of the customer base, potential discounted pricing and sales plans, current, historical, and projected volumes, costs, technical criteria, and other related data, as well as analysis of purchasing by, market segment, and others.  The data and proprietary analytical tools provide curated insights on how BCI does business, and provide data analytics of sales to every customer and of every product sold.

    39.    The extensive data and analysis, to which Sales Managers have access, is confidential BCI data and information, not available to competitors and others, and constitutes

BCI's trade secrets.  This information is available to the BCI's Sales Managers only by virtue of their position and employment with the BCI.  Using this BCI data, Sales Managers, can isolate markets, customers, specialties, prices, margins, gross profit percentages, product sales, and other confidential data and analysis, to gain a competitive advantage related to individual customers, product categories, pricing and products.  This data and information, which is developed and analyzed by the BCI at substantial cost, has significant economic value to the BCI because it is not available to competitors and others.

**B.    Vesci's Access to Confidential BCI Data, Analysis and Tools**

40.    Sales Managers obtain confidential BCI data and analysis by logging into BCI's Google Drive folders with their BCI e-mail account and password or by logging into BCI's Salesforce account with their BCI email account and password.

41.    By virtue of having access to BCI's secured Google Drive, Sales Managers have access to pricing, inventory level, specification sheets, marketing collateral & planning, MBO (goals for the quarter), BCI's template and certifications, list of frozen warehouse locations and logistic/freight companies used by BCI, bill-back agreements for both customers and distributors and brokers agreement.

42.    By virtue of having access to BCI's secured Salesforce account, Sales Managers have access to a complete list of customers, both actual accounts and lead targets, as well as marketing campaign collaterals, quotes, procedures and duplicates from BCI's secured Google Drive.

43.    Vesci was involved with BCI's new branding agency and was privy to BCI's new confidential branding strategies.  By virtue of his involvement with BCI's branding agency, Vesci had access to confidential agency branding briefs, photoshoots, and branding styles.

**C.    Reasonable Measures Taken to Protect BCI's Confidential Information**

44.    The data and information provided to the Sales Managers through these tools are confidential and proprietary to BCI; they are BCI's trade secrets.  They are available to the Sales Mangers only by virtue of their employment with BCI, and are to be used solely to further BCI's

business, customer sales, and goodwill.  A competitor who had access to this data and analysis would have an unfair competitive advantage that could enable them, for example, to use BCI's own data and analysis, to underprice BCI's price quotations, and to better service and divert customers.

45.     BCI has taken reasonable and significant steps to protect its confidential and proprietary information.  As set forth above, Sales Managers and other employees, including Vesci, are and were required to enter into confidentiality and nondisclosure agreements, such as the Confidentiality Agreement and the Employee Handbook described above and, employment agreements.

46.     BCI employees are also able to gain access to BCI's data and information only by means of login password protected security controlled entry points. Sales Managers, absent special approval, only have access to pertinent data relating to completing their jobs and are restricted from accessing folders on BCI's secured Google Drive as relates to Accounting, HR, Legal, Operations, etc...   In general folders are account restricted on the BCI's secured Google Drive on a need to know basis for the particular role of the employee.

47.     BCI also maintains employment and personnel policies requiring employees to maintain the confidentiality of the BCI's confidential information, and Vesci expressly agreed to comply with those policies.  BCI's express policy provides that confidential information includes but is not limited to:

(a) Technical Information: methods, processes, formulae, composition, systems, techniques, inventions, machines, computer programs & research projects.
(b) Business Information: Customer lists, pricing data, source of supply, financial data & marketing, production or merchandising systems or plans.

48.     By agreement of February 26, 2014, Vesci expressly agreed to comply with this policy.  Copies of this policy and of Vesci's agreement thereto are annexed hereto as Exhibit 1.

49.     BCI has spent and continues to spend significant amounts of time and money in developing, improving and protecting its confidential, proprietary, and trade secret information and the tools used to access and utilize that data.

50.     The confidential, proprietary, and trade secret information has independent economic value in that it consists of information that is neither generally known nor readily ascertainable within the industry through lawful means.  BCI has made reasonable efforts to ensure that secrecy of its confidential, proprietary, and trade secret information, and the confidential, proprietary, and trade secret information constitutes a trade secret that merits legal protection from unauthorized disclosure, misappropriation, dissemination and/or use.

***Vesci's Theft and Misappropriation of BCI's Information, and Attempts to Divert BCI's Customers***

51.     Vesci represented BCI at the National Restaurant Association (NRA) Trade Show from May 20, 2016 - May 23 2016.  Vesci's role and obligations were to promote BCI's Prop & Peller Pretzel product, develop new clients, and further develop relations with existing clients. On information and belief, prior to, at the NRA Trade Show and subsequently after the NRA Trade Show, Vesci was in contact with competitor J & J Snack Foods.

52.     In the months following the Trade Show, Vesci's sales activities significantly declined and access and participation on the BCI's Salesforce account declined as well.  Vesci failed to follow up on a number of BCI provided leads or follow up with any relevant leads of his own.

53.     On August 16, 2016 BCI requested that Vesci sign a revised non-disclosure agreement.  On August 18, 2016 BCI sent a reminder to Vesci to sign the revised non-disclosure agreement. On information and belief as early as August 23, 2016 Vesci received a job offer from J & J Snack Foods.

54.     On September 2, 2016 Vesci requested a copy of his originally executed confidentiality agreement.  On September 7, 2016 BCI sent another reminder to Vesci to sign the revised non-disclosure agreement and on that same day, Vesci abruptly resigned.

55.     Upon information and belief, prior to resignation, Vesci accessed or downloaded copies of BCI's trade secret, confidential and proprietary, customer lists, pricing data, and other market analysis documents.

56.     Upon information and belief, after the NRA trade show and prior to resignation, Vesci diverted customers away from BCI by not pursuing leads or following up with existing customers to usurp the opportunities to be used as an employee at J & J.

57.     Upon information and belief, J & J Snack Foods developed a new line of Bavarian pretzels to be competitive with BCI's product line while in employment discussions with Vesci.  On information and belief, following employment discussions with Vesci , J & J Snack Foods filed three United States Trademark Applications (87/126,940 BRAHAUS BREZEL, 87/174,250 BRAHAUS PRETZEL, and 87/174,258 BRAHAUS PRETZEL (stylized)) for use in connection with soft pretzels.

58.     Upon information and belief, subsequent to joining J & J Vesci misappropriated the trade secrets he had stolen including customer and pricing lists and began directly soliciting BCI customers, directly comparing J & J' s products to BCI's and using BCI's pricing models to undercut BCI's pricing on behalf of J & J.

59.     Upon information and belief, Vesci represented to existing BCI customers that he had the proprietary BCI pretzel formula and BCI manufacturing/backing know-how such that J & J could create a superior and cheaper product to the BCI product.  As a result, BCI has been forced to lower pricing on existing products to remain competitive.

60.     Upon information and belief, Vesci misappropriated additional trade secret information, and diverted additional orders and sales, which have not yet been discovered.

61.     As a direct result of Vesci's conduct as aforesaid, BCI, on information and belief, lost a substantial amount in business and orders, had its customers improperly diverted, suffered damage to its goodwill with customers, and lost customers in Vesci's territory.  In addition, BCI faces further future losses of customers and goodwill as a result of Vesci's improper and unlawful conduct.  Further, BCI has had to incur costs and retain counsel to investigate and remedy Vesci's conduct.

62.     Vesci took and misappropriated BCI's trade secret information by unlawful and improper means, as alleged above, and without BCI's consent.  On information and belief, Vesci

has used and intends to continue to use, BCI's trade secret information that he took, to compete

unfairly with BCI.

63.     Vesci's breaches and violations of contract, law and duty as alleged herein have

damaged and will damage BCI, in that they harm and tend to harm BCI by damaging BCI's

business goodwill, interfering with its customer relationships, and resulting in diversion and loss

of sales, customers, and brand value. BCI has suffered and will continue to suffer lost sales, loss

in value of its relationships, and will be forced to incur attorneys' fees and other costs to protect

its interests.  BCI's goodwill with customers has been damaged and interfered with, and its

reputation harmed.

64.     Vesci's actions reflect his blatant disregard for legal and contractual obligations

and evince intent to continue with these violations.

## FIRST CAUSE OF ACTION
### Defendant Vesci's and Defendant J & J's Misappropriation of Trade Secrets under the Defend Trade Secrets Act (18. U.S.C. § 1836, *et seq.*)

65.     BCI repeats, realleges, and incorporates by reference the prior allegations of this

Complaint as if fully set forth herein.

66.     BCI owned and possessed certain confidential, proprietary and trade secret

information, as alleged above.

67.     This confidential, proprietary, and trade secret information relates to products and

services used, sold, shipped and ordered in, or intended to be used, sold shipped and/or ordered

in, interstate or foreign commerce.

68.     BCI has taken reasonable measures to keep such information secret and

confidential.

69.     This confidential, proprietary, and trade secret information derives independent

economic value from not being generally known to, and not being readily ascertainable through

proper means by another person who could obtain economic value from the disclosure or use of

the information.

70.     In violation of BCI's rights, Vesci, on behalf of himself or on behalf of J & J,

misappropriated the confidential, proprietary and trade secret information in the improper and unlawful manner as alleged herein.

71.     Vesci's misappropriation of the confidential, proprietary, and trade secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

72.     Despite demand being made on him, Vesci has failed to return and discontinue using BCI's confidential and trade secret information and attempted to conceal his theft of such information.

73.     Unless preliminary and permanently enjoined, Vesci will continue to misappropriate, disclose, and use for his own benefit, for the benefit of J & J and to BCI's detriment, BCI's trade secret information.

74.     As the direct and proximate result of Vesci's conduct as aforesaid, BCI has suffered and, if Vesci's conduct is not stopped, will continue to suffer, irreparable injury and significant damages, in an amount to be proven at trial.

75.     Because BCI's remedy at law is inadequate, BCI seeks, in addition to damages, temporary, preliminary, and permanent injunctive relief to recover and protect its confidential, proprietary, and trade secret information and other legitimate business interests. BCI's business is reliant on its business reputation and its ability to maintain and grow its client base in a competitive market and will continue suffering irreparable harm absent injunctive relief.

76.     BCI has a substantial likelihood of success on the merits because of Vesci's blatant, willful, and malicious misappropriation of trade secrets through the improper and unlawful methods, as alleged herein.

77.     BCI has been damaged by all of the foregoing and is entitled to its damages, in an amount to be determined at trial but not less than $75,000.00, as well as an award of exemplary damages and attorney's fees.

/ / /

/ / /

/ / /

**SECOND CAUSE OF ACTION**
**Defendant Vesci's and Defendant J & J's**
**Federal Unfair Competition under 15 U.S.C. §1125(a)**

78.     BCI repeats, realleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

79.     J & J's adoption of its pretzel smile subsequent to engaging Vesci introduced a confusingly similar trade dress to BCI's pretzel smile in its Bavarian-style pretzels.

80.     J & J's pretzel smile is likely to cause and may, in fact, have cause confusion in the relevant market leading purchasers of J & J'S BRAUHAUS PRETZELS to mistakenly believe that they are affiliated with or source-identified with BCI.

81.     J & J's adoption of the pretzel smile for its BRAUHAUS PRETZELS constitutes a false and misleading use of a symbol or device in violation of 15 U.S.C. §1125(a).

82.     Vesci's false and misleading statements in the marketplace, made as an employee of J & J and for the benefit of J & J, that he is the originator of BCI's pretzel recipe and that J & J's BRAUHAUS PRETZEL employs the same or similar recipe constitutes false and misleading statements concerning the nature, characteristic, quality of J & J's BRAUHAUS PRETZEL is in violation of 15 U.S.C. §1125(a).

83.     Unless preliminarily and permanently enjoined from continuing to use the pretzel smile and making false and misleading statements concerning the origin of BCI's pretzel recipe will cause irreparable and continuing injury to BCI.

84.     BCI has a substantial likelihood of success on the merits because of Vesci's blatant, willful, and malicious misappropriation of trade secrets through the improper and unlawful methods, as alleged herein.

85.     BCI has been damaged by all of the foregoing and is entitled to its damages, in an amount to be determined at trial, but not less than $75,000.00, as well as an award of exemplary damages and attorney's fees.

/ / /

15

### THIRD CAUSE OF ACTION
**Defendant Vesci's and Defendant J & J's Misappropriation of Trade Secrets
under Nevada Revised Statutes § 600A**

86.     BCI repeats, realleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

87.     BCI owned and possessed confidential and proprietary documents and data containing trade secrets, including, but not limited to, customer lists, analyses and information, all as alleged herein.

88.     BCI made reasonable efforts to keep secret information contained in these confidential and proprietary documents, by, among others, limiting access to confidential information, requiring employees, including Vesci, to sign confidentiality agreements, implementing employment policies that required confidentiality, and limiting computerized access.

89.     BCI's trade secrets contained in the documents and data alleged herein, derive independent economic value, both actual and potential, from not being generally known to other persons, business, or the public, who could obtain economic value from their disclosure or use.

90.     In violation of BCI's rights at law and under contracts, Vesci, on behalf of himself or on behalf of J & J, misappropriated the trade secret data, documents and information described herein. Vesci, intentionally, and with reason to believe that its actions would cause injury to BCI, misappropriated and exploited the trade secret information through use and disclosure of the use of the trade secret for Vesci's own use and personal gain or on behalf of J & J.

91.     As the direct and proximate result of Vesci's misappropriation as aforesaid, BCI has suffered and, if Vesci's conduct is not enjoined, will continue to suffer irreparable injury, as well as damages in an amount to be determined at trial.

92.     Because BCI's remedy at law is inadequate, BCI seeks, in addition to its damages, temporary, preliminary and permanent injunctive relief to recover and protect its trade secrets and legitimate business interests.

93.      BCI has a substantial likelihood of success on the merits because of Vesci's blatant misappropriation of trade secrets as set forth herein.

94.      Vesci's acts were malicious, fraudulent, and oppressive and were done with conscious disregard of BCI's rights, all within the meaning of Nevada Revised Statutes § 600A, in that Vesci misappropriated BCI's trade secret information intentionally and knowingly and with a deliberate intent to benefit himself and injure BCI's business.  BCI is entitled to its damages, in an amount to be determined at trial, but not less than $75,000.00, as well as injunctive relief, and an award of punitive damages and/or treble damages and attorney's fees pursuant to Nevada Revised Statutes § 600A.040,  § 600A.050, and § 600A.060.

## FOURTH CAUSE OF ACTION
### Defendant Vesci's and Defendant J & J's
### Unfair Trade Practices Infringement of Trade Secrets
### under Nevada Revised Statutes § 603

95.      BCI repeats, realleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

96.      BCI owned and possessed confidential and proprietary data stored on a computer system containing trade secrets, including, but not limited to, customer lists, analyses and information, all as alleged herein.

97.      BCI made reasonable efforts to keep secret information contained in this confidential and proprietary data, by, among others, limiting access to confidential information, requiring employees, including Vesci, to sign confidentiality agreements, implementing employment policies that required confidentiality, and limiting computerized access.

98.      BCI's trade secrets contained in the documents and data alleged herein, derive independent economic value, both actual and potential, from not being generally known to other persons, business, or the public, who could obtain economic value from their disclosure or use.

99.      In violation of BCI's rights at law and under contracts, Vesci on behalf of himself or on behalf of J & J, without the consent of BCI, obtained possession of the proprietary data stored on the computer system and converted that data for his own use or the use of J & J.  On

information and belief, Vesci infringed BCI's trade secrets by obtaining possession of proprietary information stored as data in BCI's computer system and made copies of that data. Vesci intentionally, and with reason to believe that its actions would cause injury to BCI, misappropriated and exploited the trade secret information through use and disclosure of the use of the trade secret for Vesci's own use and personal gain.

100. As the direct and proximate result of Vesci's misappropriation as aforesaid, BCI has suffered and, if Vesci's conduct is not enjoined, will continue to suffer irreparable injury, as well as damages in an amount to be determined at trial.

101. Because BCI's remedy at law is inadequate, BCI seeks, in addition to its damages, temporary, preliminary and permanent injunctive relief to recover and protect its trade secrets and legitimate business interests.

102. BCI has a substantial likelihood of success on the merits because of Vesci's blatant misappropriation of trade secrets as set forth herein.

103. Vesci's acts were malicious, fraudulent, and oppressive and were done with conscious disregard of BCI's rights, all within the meaning of Nevada Revised Statutes § 600A, in that Vesci misappropriated BCI's trade secret information intentionally and knowingly and with a deliberate intent to benefit himself and injure BCI's business. BCI is entitled to its damages, in an amount to be determined at trial, but not less than $75,000.00, as well as injunctive relief, and an award of punitive damages and/or treble damages and attorney's fees pursuant to Nevada Revised Statutes § 600A.040, § 600A.050, and § 600A.060.

**FIFTH CAUSE OF ACTION**
**Defendant Vesci's Breach of Written Contract**

104. BCI repeats, realleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

105. Pursuant to the Employment Agreement and Employee handbook Vesci was obligated to, inter alia: keep confidential, both during and subsequent to his employment with BCI, all of BCI's confidential, proprietary, and trade secret information.

18

106.    Pursuant the Confidentiality Agreement Vesci was obligated to, inter alia: keep confidential, both during and subsequent to his employment with BCI, all of BCI's confidential, proprietary, and trade secret information.

107.    In breach of his contractual obligations, Vesci misappropriated BCI's confidential, proprietary, and trade secret information.

108.    As a direct and proximate cause of Vesci's breach BCI suffered extensive damage, the exact amount to be determined at trial.

109.    BCI will continue to be directly and proximately damaged, and its goodwill irreparably harmed, if Vesci is not enjoined from further violation of these agreements, and if Vesci is not directed to comply therewith, and prohibited from using and disclosing BCI's confidential and proprietary information.  BCI has no adequate remedy at law as money damages alone will not fully compensate BCI, and injunctive relief is warranted to prevent further irreparable harm to BCI.

110.    BCI accordingly seeks damages and preliminary and permanent injunctive relief.

## SIXTH CAUSE OF ACTION
### Defendant Vesci's Breach of Fiduciary Duty and Duty of Loyalty

111.    BCI repeats, realleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

112.    As an employee of BCI, Vesci owed BCI his undivided loyalty and was obligated to act with the utmost good faith, and in the best interests of BCI.

113.    BCI was entitled to place its trust and confidence in Vesci and to expect Vesci to act with the utmost good faith toward it in carrying out the business of BCI.

114.    BCI relied on Vesci's loyalty and integrity and his faithful performance of his duties and responsibilities.

115.    Vesci took advantage of BCI's faith in him by not performing his duties to BCI, by acting in conflict of interest, by engaging in business for his own account and for BCI's

competitor, J & J, and in competition with BCI, and by deceiving BCI and concealing his improper conduct.

116.    Vesci, upon information and belief, knowingly and willingly breached his duty of loyalty to BCI by scheming to deceive and defraud BCI, misappropriating and stealing BCI's confidential and trade secret information, attempting to divert customers to J & J, soliciting BCI's customers on his own behalf and on behalf of J & J while employed by BCI, and diverting and misappropriating BCI's trade secrets, confidential and proprietary business information and customers.

117.    Vesci acted in a manner inconsistent with his agency and trust by soliciting BCI's customers on his own behalf, and on behalf of BCI's competitors, and by diverting and misappropriating BCI's sales, profits and property; Vesci acted on his own and on J & J's behalf, and against BCI's interests, while employed by BCI.

118.    As direct and proximate result of Vesci's disloyalty to BCI and breach of his duties, BCI has been and is being harmed.  BCI is entitled to its damages, in an amount to be determined at trial, as well as disgorgement from Vesci, and the forfeiture and return of all monies and compensation paid to him during his period of disloyalty, the exact amount to be determined at trial.  BCI is further entitled to injunctive relieve against Vesci and all those acting in concert or participation with him, remedying their past improper conduct, and preventing such conduct in the future.

119.    Vesci is, on information and belief, still in possession of BCI's confidential and trade secret information, and, on information and belief is able to access and use this information on behalf of BCI's competitor, J & J.  Further, on information and belief, Vesci shared this confidential information with others who may use, or are using the information to BCI's detriment.

120.    As a direct and proximate result of Vesci's disloyalty, BCI has been irreparably injured, and has suffered damages in an amount to be determined at trial.  Because its remedy at law is inadequate, BCI seeks, in addition to its damages, preliminary and permanent injunctive

relief, enjoining Vesci, and all those acting in concert or participation with him, from further improper conduct, and from dealing with customers whose confidential information he misappropriated, and further remedying their improper conduct as aforesaid.

### SEVENTH CAUSE OF ACTION
**Defendant Vesci's Breach of Implied Covenant of Good Faith and Fair Dealing**

121.    BCI repeats, realleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

122.    The Employment Agreement and Employee Handbook between BCI and Vesci contained an implied covenant of good faith and fair dealing.  This implied covenant obligated Vesci to refrain from doing any act that would deprive BCI of the benefits of the agreement or that would impede BCI from performing any or all of the conditions of the conditions of the agreement that it agreed to perform.

123.    Vesci's misconduct as described herein breached the implied covenant of good faith and dealing.  Specifically, Vesci failed to further and develop BCI's business during the time prior to his resignation or otherwise adequately perform his duties as North East Sales Manager for BCI.  Upon information and belief, subsequent to initial contact with J & J, Vesci failed to follow up with active customers and current leads.

124.    Upon information and belief during the course of his employment, Vesci transferred BCI's confidential and proprietary business information without authorization.

125.    As a proximate result of these breaches and of the other improper conduct alleged above, BCI has been irreparably injured and has suffered damages in an amount to be determined at trial.  Because its remedy at law is inadequate, Plaintiff also seeks, in addition to its damages, preliminary and permanent injunctive relief.

### EIGHTH CAUSE OF ACTION
**Defendant Vesci's and Defendant J & J's**
**Tortious Interference with Actual and Prospective Economic Relations**

126.    BCI repeats, realleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

127.    BCI had a reasonable business expectancy and ongoing relationship with its customers.  BCI had a reasonable expectation in engaging in business with, and in earning profits in connection with sales to, (a) its existing customers with whom Vesci dealt, (b) new customers with whom Vesci dealt while employed by BCI, and (c) customers who were involved in negotiations and discussions with BCI and/or with Vesci while he was employed by BCI.

128.    Vesci knew Plaintiff's business relationship and business expectancy from the customers.

129.    Vesci intentionally, and in violation of his duties, interfered with that expectancy by diverting existing accounts and prospective accounts, and by other improper means.  On information and belief, Vesci on behalf of himself and on behalf of J & J, used the misappropriated confidential pricing data to undercut BCI's pricing and divert existing and potential customer away from BCI to J & J.  Vesci engaged in this diversion through fraudulent and deceitful conduct, such as that alleged herein and other conduct that may be discovered.

130.    Vesci's misconduct on behalf of J & J was intentional, outrageous, and deceitful, and committed in reckless disregard of his duties and BCI's rights.

131.    As a direct and proximate result of J & J and Vesci's improper conduct, BCI has suffered damages including lost profits, the exact amount to be determined at trial.

132.    In addition, Vesci's wrongful acts on behalf of J & J also were willful, oppressive, malicious and/or fraudulent, thereby justifying an award of punitive damages.

### NINTH CAUSE OF ACTION
**Defendant Vesci's and Defendant J & J's**
**Deceptive Trade Practice under Nevada Revised Statutes § 598**

133.    BCI repeats, realleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

134.    Vesci on behalf of himself and on behalf of J & J knowingly and willingly engaged in a deceptive trade practice when, upon information and belief, Vesci knowingly made false representations in a transaction and made representations as to the source of goods to BCI

customers  when engaging BCI customers and admitting the use of BCI's pretzel recipe or similar recipe thereto.

135.    As the direct and proximate result of Vesci's deceptive trade practice as aforesaid, BCI has suffered and, if Vesci's conduct is not enjoined, will continue to suffer irreparable injury, as well as damages in an amount to be determined at trial.

136.    Because BCI's remedy at law is inadequate, BCI seeks, in addition to its damages, temporary, preliminary and permanent injunctive relief to recover and protect its trade secrets and legitimate business interests.

137.     BCI has a substantial likelihood of success on the merits because of Vesci's blatant misappropriation of trade secrets as set forth herein.

138.     Vesci's acts were malicious, fraudulent, and oppressive and were done with conscious disregard of BCI's rights, all within the meaning of Nevada Revised Statutes § 598. BCI is entitled to its damages, in an amount to be determined at trial, but not less than $75,000.00, as well as injunctive relief, and an award of punitive damages and/or treble damages and attorney's fees pursuant to Nevada Revised Statutes § 598.

**PRAYER FOR RELIEF**

**WHEREFORE**, BCI respectfully demands judgement in its favor and against Vesci and/or J & J, as follows:

A.    Awarding damages as described in each of the above claims, in favor of BCI and against Vesci and/or J & J in amounts to be determined at trail, but not less than $75,000.00.

B.    Granting a preliminary and permanent injunction against Vesci and/or J & J, enjoining Vesci from violating his legal and contractual duties to BCI, from soliciting or accepting business from BCI's customers whose data Vesci took or who he solicited on behalf of J & J while employed by BCI or thereafter, and from using BCI's confidential and proprietary information to unfairly compete with BCI, and directing return of all of BCI's property.

C.    Granting a preliminary and permanent injunction against J & J enjoining J & J's use of the pretzel smile or other confusingly similar symbol or device on or in connection with J

1  & J's Bavarian-style pretzels.

2      D.     Granting a preliminary and permanent injunction against J & J and Vesci from

3  making false and misleading statement concerning the origin of BCI's pretzel recipe and J & J's

4  use of the same or similar recipe.

5      E.     Awarding punitive damages in favor of BCI and against Vesci in the amount to be

6  determined at trial by the trier of fact.

7      F.     Awarding BCI pre-judgement and post-judgment interest, and its attorneys' fees,

8  costs and other expenses incurred in this action.

9      G.     Granting BCI such other and further relief as this Court deems just and proper.

10     Dated this 20th day of January 2017.

DICKINSON WRIGHT PLLC

ERIC D. HONE
Nevada Bar No. 8499
Email:  ehone@dickinson-wright.com
8363 West Sunset Road, Suite 200
Las Vegas, Nevada  89113-2210
Tel:  (702) 550-4400
Fax:  (844) 670-6009

*Attorneys for Plaintiff BC International Trading & Business Support, Inc.*

LVEGAS 99998-2822 107004v1